DATE FILED: September 27, 2016 12:29 PM
FILING ID: 56AA7859313B8
CASE NUMBER: 2016CV33529

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>Court Address:<br>　　　Denver City & County Building<br>　　　1437 Bannock Street<br>　　　Denver, CO 80202 | |
| **Plaintiffs:**<br><br>HUMAN NETWORK SYSTEMS, INC., a Colorado Corporation, and GORDON P. WOLFE<br><br>**Defendants:**<br><br>AMERICAN HOME ASSURANCE COMPANY, a New York Corporation, and AMERICAN PROFESSIONAL AGENCY, INC., a New York Corporation | |
| **Plaintiffs' Counsel:**<br>LAW OFFICES OF J.M. REINAN, P.C.<br>Jerome M. Reinan, #22031<br>Jordana Griff Gingrass, #38195<br>Jeremy I. Pollack, #45266<br>1437 High Street<br>Denver, CO 80218-2608<br>(303) 894-0383<br>(303) 894-0384 (FAX)<br>jreinan@reinanlaw.com<br>jgingrass@reinanlaw.com<br>jpollack@reinanlaw.com | ▲ COURT USE ONLY▲<br><br>_____<br><br>Case No.:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

　　　**COME NOW** the Plaintiffs, HUMAN NETWORK SYSTEMS, INC. and GORDON P. WOLFE, by and through counsel, the Law Offices of J.M. Reinan, P.C., and for their Complaint and Jury Demand against Defendants AMERICAN HOME ASSURANCE COMPANY, a New York Corporation and AMERICAN PROFESSIONAL AGENCY, INC., a New York Corporation, state and aver as follows:

1

## I.    PARTIES AND VENUE

1.  Plaintiff Human Network Systems, Inc., herein "HNS," is a Colorado corporation that provides social services, including trustee, care management, conservator and guardianship services, to older and disabled clients. HNS maintains principal offices at 1805 South Bellaire Street, Suite 325, Denver, Colorado 80222.

2.  Plaintiff Gordon P. Wolfe, "Wolfe," is a licensed clinical social worker and principal of HNS.  Mr. Wolf also holds a national certification in care management and as a professional guardian.

3.  At times relevant to the complaint, Plaintiffs purchased a professional liability insurance policy sold and produced by Defendant American Professional Agency Inc., herein, "APA," a New York Corporation.

4.  The professional liability insurance policy, # SSA-6905851, herein "insurance contract" was underwritten by Defendant American Home Assurance Company, a New York Corporation.

5.  Venue is proper within the District Court for the City and County of Denver, Colorado, as the acts and omissions complained of herein occurred within Denver Colorado; because Defendants can be found within the City and County of Denver Colorado; and because Plaintiffs and the principal witnesses in this case are located in or can be found within the City and County of Denver, Colorado.

6.  The amount in controversy in this matter exceeds the jurisdiction of the Denver County Court.

## II.  FACTS AND BACKGROUND

7.  Plaintiffs are providers of social services in the Denver metropolitan area and throughout the state of Colorado.

8.  The services provided by Plaintiffs are representative of private social services agencies in Colorado and across the United States.

9.  The social services provided by Plaintiffs include social service consultations, evaluations and needs assessments; long distance care giving; care management; trustee services; conservator services; guardianship services; and advanced planning services for the elderly and disabled and their families.

10. Defendant APA holds itself out as a specialty liability insurance producer that assists social services agencies such as HNS in selecting appropriate professional liability insurance that meets the needs of the social services organization.

2

11. Defendant APA entered into an agreement with AHA for a joint venture that includes the co-marketing, underwriting and sales of customized, individually-tailored insurance products to social services agencies like HNS. The insurance products tailored to social services agencies such as HNS are known as the Social Service Agency Professional Program, "SSAPP."

12. In order to lure social services agencies such as HNS into purchasing Defendants' SSAPP products, Defendants promise, represent and warn that the costs of litigation "have increased dramatically," and that a social services agency must have Defendants' custom-tailored insurance in order to provide protection against the high costs of defending litigation:

> In recent years, court judgments in such cases have increased alarmingly. Any suit brought by one of your Agency's clients, even though it may be groundless, false, or fraudulent, must be defended. The cost of such a defense can be excessively high.
>
> That is why American Home Assurance Company has developed the Social Service Agency Professional Liability Insurance Program to protect your Agency and its employees. This custom coverage has been designed to fit the special needs of any qualified Agency.

**Exhibit 1.**

13. Throughout their widely-disseminated marketing materials, Defendants repeatedly promise and represent that their SSAPP products are custom tailored to the unique needs of each applying social services agency since "every Agency is different:"

> Since every Agency is different, we tailor our premium to fit your operation and employees.

14. In order to match the insurance product to the different needs of each social services agency, Defendants require each applicant to provide Defendants with copies of its advertising or services brochure along with the insurance application:

> **We do require a copy of all promotional or descriptive brochures.**

*See* Exhibit 1, pg. 2, which requires submission of brochures with the insurance application.

15. Defendants promise that after reviewing the application and services brochure, they will match a tailored insurance program to the "special needs" of the "qualified Agency."

16. Plaintiffs read and relied upon Defendants' promises and representations as set forth above, and applied for professional liability insurance through Defendants' SSAPP program.

17. Along with a completed SSAPP insurance application, Plaintiffs provided Defendants with a copy of HNS's services brochure and mission statement. **Exhibit 2.**

3

18. HNS's brochure and mission statement describes the nature and extent of HNS's services, including its provision of conservator, trustee, care management and guardianship services for clients "whose decision-making capacity is impaired."

19. HNS's provision of conservator, trustee, care management and guardianship services is not uncommon in the social services profession, and upon information and belief, Defendants are aware that social services agencies like HNS regularly provide such professional services and thus reasonably expect that tailored social services agency insurance covers the negligent provision of such professional services.

20. Defendants received, reviewed and researched the nature and extent of HNS's professional services and determined that HNS qualified for one of Defendants' SSAPP programs.

21. By determining that HNS's professional services – including those for conservator, trustee, care management and guardianship services – qualified for an SSAPP program, Defendants explicitly promised Plaintiffs that those professional social services would be covered by the SSAPP insurance product recommended, chosen and sold by APA and underwritten by AHA.

22. In exchange for payment of a premium, Defendants issued the insurance contract, # SSA-6905851. **Exhibit 3.**

23. Plaintiff HNS is the primary insured and Plaintiff Wolfe an additional insured under the insurance contract.

24. Plaintiffs have paid for and renewed the insurance contract for several consecutive years.

25. At the time of each renewal, Defendants have known that Plaintiffs' array of professional social services include the provision of conservator, trustee and guardianship services.

26. At no time prior to September 29, 2014, did Defendants notify Plaintiffs that the insurance product that was 'custom-tailored' for them based on their services brochure excluded from coverage the conservator, trustee and guardianship services identified in the HNS services brochure.

27. While in the course of providing professional trustee services, as identified in Exhibit 3, Plaintiffs were appointed as co-trustees of the Kenneth M. Fritzler Trust, which was created as part of a medical malpractice settlement.

28. Mr. Fritzler's aunt, Geralyn Costa, was appointed as Mr. Fritzler's co-trustee.

4

29. At the time of Plaintiffs' appointment as co-trustee of the Fritzler Trust, both Defendants were specifically aware of and had acquiesced to or ratified Plaintiffs' provision of trustee services.

30. In May, 2014, Plaintiffs received a copy of a Petition for Surcharge, Attorneys Fees and Other Relief filed by Mr. Fritzler, Case No. 2011PR413, in Douglas County District Court, herein, "Initial Petition." A copy of the Initial Petition is attached as **Exhibit 4.**

31. In the Initial Petition, Mr. Fritzler alleged that his aunt and co-trustee, Ms. Costa, borrowed more than $175,000 against real-estate partly owned by his trust, and thereafter squandered the proceeds, leaving the trust property saddled with a mortgage.

32.  Mr. Fritzler alleged, among other things, that Plaintiffs:

    a.   Failed to keep adequate professional records,  ¶ 3.e;
    b.   Neglected to take proper steps to compel the co-trustee to redress a breach of trust, ¶ 8;
    c.   Negligently failed to supervise the co-trustee, ¶ 8;
    d.   Negligently failed to obtain an annual certification from a CPA or lawyer, ¶11; and
    e.   Failed to "exercise reasonable care in the administration of the trust…" ¶12.

33. Mr. Fritzler alleged that in so doing, Plaintiffs "breached common law" duties and the "standard of care" for trustees.

34. In no way did Mr. Fritzler allege, argue or imply that Plaintiffs, or either of them, engaged in self-dealing, intentional conduct, fraud, criminal conduct or other facts that would rise to the level of a breach of fiduciary duty, as opposed to merely negligent conduct, in the course of rendering professional social services.

35. Consistent with their duties under the above-referenced insurance contract, Plaintiffs promptly forwarded a copy of first petition to representatives of Defendants and requested that a defense be provided to Plaintiffs consistent with the terms of the insurance contract.

36. On September 29, 2014, a representative of AHA sent Plaintiffs a letter denying indemnity and a defense to the claims brought in the initial petition.

37. A copy of the denial of coverage letter is attached as **Exhibit 5**.

38. In the denial of coverage letter, AHA took the position that the claims brought in the initial petition were not covered under the insurance contract because the claims related solely to the breach of a fiduciary duty, which AHA identified as an enumerated exclusion under the insurance contract.

39. However, under well-established Colorado law known to AHA, claims for professional negligence and breach of fiduciary duty are generally duplicative of one another and are categorized as professional negligence, absent allegations of self-dealing, intentional conduct, fraud or criminal conduct.

40. AHA's denial of a defense based on the assertion that Mr. Fritzler's claims sounded in breach of fiduciary duty was thus unreasonable and undertaken in bad faith, with the knowledge that AHA's denial of a defense was contrary to well-established Colorado law.

41. As a result of AHA's wrongful and bad faith breach of its duty to defend Plaintiffs against the negligence claims brought by Mr. Fritzler, Plaintiffs hired attorneys at their own expense.

42. On December 8, 2014, Mr. Fritzler filed a First Amended Petition for Surcharge, Attorneys Fees and Other Relief against Plaintiffs. A copy of the First Amended Petition is attached as **Exhibit 6.**

43. In the First Amended Petition, which replaced and superseded the Initial Petition, Mr. Fritzler alleged, among other things:

   a. HNS "*fail[ed] to exercise reasonable care* in the administration of the trust…" ¶12;
   b. HNS and Wolfe "were *negligent* in a) *failing* to obtain annual certification by a CPA or lawyer; b) making ongoing and increasing trust distributions to Ms. Costa for mortgage payments… and c) *failing* to keep adequate records of all assets, income and expenditures as required pursuant to the terms of the trust." ¶13;
   c. HNS and Wolfe were "*negligent* in its *failure* to supervise Ms. Costa…and in its failure to require Ms. Costa to properly document both the need for the amount of the trust's ongoing distributions to her and proof that the distributions were being utilized by her as intended for the benefit of the beneficiary." ¶14; and
   d. Wolfe was *negligent* in his "supervision of an employee who was managing money." ¶14.

[emphases supplied]

44. Mr. Fritzler's First Amended Petition alleged causes of action for breach of the standard of care; mismanagement of the estate; failure to perform duties; general negligence regarding the administration and distribution of the estate; and negligence in the failure of the professional co-trustee to supervise both its own representative and the non-professional co-trustee. ¶15.

45. As with the Initial Petition, the First Amended Petition did not allege any conduct that would amount to a true breach of fiduciary duty, such as self-dealing, intentional conduct, fraud or criminal conduct.  Rather, the First Amended Petition alleged that Plaintiffs were merely negligent in rendering professional social services to Mr. Fritzler.

46. On December 9, 2014, Plaintiffs duly provided a copy of the First Amended Petition to representatives of Defendants and demanded, through their attorneys, that AHA provide a defense to the claims brought in the First Amended Petition. In their letter to AHA, Plaintiffs noted that the First Amended Petition clearly and unequivocally alleged that Plaintiffs were negligent in their monitoring of the trust.

47. AHA again denied Plaintiffs a defense based upon its false assertion that the claims against Plaintiffs were based entirely upon a breach of fiduciary duty.

48. AHA's second denial of a defense based on the false assertion that Mr. Fritzler's claims sounded in breach of fiduciary duty was thus unreasonable and undertaken in bad faith, with the knowledge that AHA's denial of a defense was contrary to well-established Colorado law.

49. As a result of AHA's wrongful conduct, including its intentional and bad faith breach of the terms of the insurance contract, Plaintiffs were forced to continue to pay for their own attorneys to defend themselves against Mr. Fritzler's claims for damages.

50. Although Plaintiffs believed that Mr. Fritzler's claims were defensible, Plaintiffs made the informed decision to settle the claims brought by Mr. Fritzler rather than expend personal funds on attorneys, expert costs and court costs in light of AHA's bad faith decision to deny them a defense.

51. As a result of AHA's wrongful and bad faith conduct, Plaintiffs were forced to pay Mr. Fritzler $60,000 in settlement in order to avoid protracted and "excessively high" defense costs – and the potential for financial disaster and bankruptcy – as well as $77,250 in attorneys fees, court costs, expert fees and mediation fees.

52. This settlement and defense money was partially loaned to HNS by Wolfe, who suffered extreme emotional distress, upset, sleeplessness, depression, and anxiety as a direct result of AHA's wrongful and bad faith breach of contract, which in turn personally exposed Wolfe and HNS to potential bankruptcy and financial ruin.

### III.   FIRST CLAIM FOR RELIEF:
### BAD FAITH BREACH OF INSURANCE CONTRACT (STATUTORY)
### (By both Plaintiffs against Defendant AHA)

53.  Plaintiffs hereby incorporate each and every averment set forth herein as if each and every averment were set forth verbatim herein.

54. Plaintiffs are both first-party claimants as defined under C.R.S. § 10-3-1115(1)(b)(I).

55. AHA denied coverage of a bargained for benefit under the insurance contract.

7

56. In particular, AHA denied Plaintiffs both a defense and indemnification for the claims brought against them by Mr. Fritzler.

57. AHA's denial of a defense and/or indemnification occurred without a reasonable basis, without a reasonable investigation, and through the knowingly false and wrongful application of Colorado law.

58. AHA's bad faith breach of insurance contract caused Plaintiffs to suffer injuries, damages and losses as described in greater detail herein.

59. In particular, Defendant AHA's bad faith breach of insurance contact caused Plaintiffs to suffer economic loss in the form of attorneys' fees and a forced settlement of the claims.

60. In addition, Plaintiff Wolfe has suffered actual and non-economic loss in the form of extreme emotional distress, upset, sleeplessness, anxiety, and depression as a direct result of Defendant AHA's bad faith breach of contract.

61. Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116(3), Plaintiffs have a right to trial of this claim by a jury, and hereby claim and enforce that right.

62. Pursuant to C.R.S. § 10-3-1116(1), Plaintiffs claim double damages, court costs and attorneys fees stemming from AHA's wrongful denial of benefits bargained for under the insurance contract.

## IV.  SECOND CLAIM FOR RELIEF:
## BAD FAITH BREACH OF INSURANCE CONTRACT (COMMON-LAW)
### (By both Plaintiffs against Defendant AHA)

63. Plaintiffs hereby incorporate each and every averment set forth herein as if each and every averment were set forth verbatim herein.

64. AHA acted unreasonably and in bad faith in its investigation and/or denial of indemnity and a defense under the insurance contract.

65. In particular, but not by limitation, AHA acted unreasonably and in bad faith by failing to provide a defense to Plaintiffs even though both the initial and the amended petitions contained clear and unequivocal claims for professional negligence, which were covered and were not excluded by the terms of the insurance contract.

66. AHA knew that its conduct in denying coverage was unreasonable and in bad faith and/or AHA recklessly disregarded the fact that its denial of indemnity and a defense was unreasonable and in bad faith.

67. As a direct and proximate result of AHA's unreasonable and bad faith denial and/or reckless disregard of insurance coverage, Plaintiffs have suffered injuries, damages and losses to be determined by the jury at trial.

## V.  THIRD CLAIM FOR RELIEF: DECLARATORY JUDGMENT
### (By both Plaintiffs against Defendant AHA)

68. Plaintiffs hereby incorporate each and every averment set forth herein as if each and every averment were set forth verbatim herein.

69. Pursuant to C.R.C.P. 57, this Court has the power to declare rights, legal status and other legal relationships whether or not further relief could be claimed.

70. Plaintiffs seek declaratory judgment pursuant to C.R.C.P. 57 to determine that AHA had a duty to defend Plaintiffs in the claims brought against them by Mr. Fritzler and/or that AHA had a duty to indemnify Plaintiffs for payments or settlements made to Mr. Fritzler.

71. Plaintiffs hereby request the Court to determine whether AHA owed the Plaintiffs a duty of defense and/or indemnity under the terms of the insurance contract.

## VI.  FOURTH CLAIM FOR RELIEF: VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (By both Plaintiffs against both Defendants)

72. Plaintiffs hereby incorporate each and every averment set forth herein as if each and every averment were set forth verbatim herein.

73. The Colorado Consumer Protection Act, "CCPA," C.R.S. § 6-1-101 *et seq,* provides Plaintiffs legal protection against deceptive trade practices committed by business entities.

74. For the purposes of the CCPA, Plaintiffs are consumers of insurance, and Defendants engage in the businesses of selling, marketing, underwriting and adjusting insurance contracts.

75. The CCPA has specifically been interpreted to punish and deter deceptive trade practices, including post-sales deception, perpetrated by the insurance industry.

76. Defendant APA promises and represents, in widely distributed marketing and advertising materials, that it provides insurance selection services that are "custom" and "specially tailored" to the individual needs of social services agencies, many of which provide professional guardianship, conservatorship and trusteeship services as part of their profession.

77. Defendant APA's promises and representations are knowingly false and violate the CCPA because APA knows and intends:

9

    a.  That it does not provide any individual, customized or specially tailored insurance policies or programs.  Rather, the APA merely sells a generic professional liability policy that does not reflect the special needs or requirements of a professional social services agency, let alone the individual needs of HNS based upon the services brochure provided to APA and AHA;

    b.  That its SSAPP program, which it co-markets with AHA, is not appropriate for or tailored to a social services agency like HNS because 1) APA knows that social services agencies commonly provide professional guardianship, conservatorship and trusteeship services as part of their profession; and 2) APA knows that AHA interprets the provision of professional guardianship, conservatorship and trusteeship services as "fiduciary" services that are excluded under the terms of the contract.

78. APA also engaged in deceptive trade practices in violation of C.R.S. § 6-1-105(1)(u) by concealing from Plaintiffs the fact that Plaintiffs' primary business model of providing professional guardianships, conservatorships and trusteeships was interpreted by AHA as excluded from coverage under the SSAPP program, knowing that this information was an important fact necessary to Plaintiffs' consuming decisions.

79. Defendant AHA engaged in deceptive trade practices in violation of C.R.S. § 6-1-105 by engaging in the acts and omissions described above and by co-marketing, with APA, a specialized insurance program for social services agencies organizations which it knew and intended would not meet the individual or collective needs of such social services organizations.

80. AHA knew, at the time it co-marketed the SSAPP program with APA, that social services agencies such as HNS often provided professional guardianship, conservatorship, care management and trusteeship services and knew that social services agencies such as HNS thus expected and intended that the SSAPP insurance contract would provide coverage for such services.

81. AHA intentionally deceived Plaintiffs and other social services agencies similarly situated by selling and underwriting what was promised as professional liability insurance individually and collectively tailored to social services agencies knowing and intending that the insurance would not cover a majority of the professional services provided by such agencies.

82. Plaintiffs are relatively unsophisticated consumers of professional insurance products and lack the knowledge and bargaining power sufficient to know and understand the deceptive nature of Defendants' insurance scheme.

83. Defendants' false and deceptive conduct and advertisements are widely disseminated through the Internet and thus throughout the state and country, and thus have a significant impact on the market for social services organizations specialty insurance.

84. AHA further engaged in post-sales deception by engaging in the acts and omissions described herein and by wrongfully denying Plaintiffs indemnity and a defense based upon a false and deceptive interpretation of its own insurance policy.

85. As a result of Defendants' deceptive trade practices, Plaintiffs have suffered actual injuries, damages and losses in an amount to be determined by the jury at trial.  Defendants engaged in bad faith conduct, entitling Plaintiffs to treble damages as well as attorneys fees.

WHEREFORE, for the reasons set forth herein, Plaintiffs pray that this Honorable Court enter judgment in their favor and against the Defendants on all claims for relief set forth herein, and following trial to a jury, award the following damages:

- a. Noneconomic loss;
- b. Economic loss;
- c. Actual damages;
- d. Statutory double and treble damages;
- e. Attorneys fees;
- f. Pre and post judgment interest; and
- g. Court costs, witness, and expert witness fees and other costs allowable under Colorado law.

<u>**PLAINTIFFS DEMAND TRIAL TO A JURY OF SIX**</u>

**This matter is exempt from C.R.C.P. 16.1 as the damages claimed herein exceed $100,000.**

Respectfully submitted this 27th day of September, 2016.

LAW OFFICES OF J.M. REINAN, P.C.

/s/ Jerome Reinan

Jerome Reinan, #22031
Jordana Griff Gingrass, #38195
Jeremy I. Pollack, #45266
1437 High Street
Denver, CO 80218-2608
(303) 894-0383
(303) 894-0384 facsimile
*Attorneys for the Plaintiffs*

11

Plaintiffs' addresses:

Human Systems Network, Inc.
1805 South Bellaire Street, Suite 325
Denver, Colorado 80222

Gordon P. Wolfe
10960 N. Solar Drive
Littleton, Colorado 80125